**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CARL PETITE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 09-1347-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 16, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 14, 2009, and August 21, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on February 11, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on July 9, 1944. [Administrative Record ("AR") at 78.] He completed three years of college [AR at 100], and has past relevant work experience as a director of marketing and sales. [AR at 97.]

On December 29, 2005, plaintiff filed an application for Disability Insurance Benefits, alleging that he has been unable to work since June 1, 2002, due to attention deficit disorder ("ADD") and high blood pressure. [AR at 78, 96.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 48-52, 55-59, 61-62.] A hearing was held on January 7, 2008, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 20-45.] Plaintiff's wife, Martha Petite, also testified at the hearing. [AR at 36-44.] On February 13, 2008, the ALJ determined that plaintiff was not disabled. [AR at 11-19.] When the Appeals Council denied plaintiff's request for review on April 30, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.] This action followed.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b); Lester, 81 F.3d at 828 n.5. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c); Lester, 81 F.3d at 828 n.5. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d); Lester, 81 F.3d at 828 n.5. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine

whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e); Lester, 81 F.3d at 828 n.5. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520(g), 416.920(g); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 13.] At step two, the ALJ concluded that plaintiff has a "questionable severe impairment from an anxiety like disorder." [Id.] At step three, the ALJ determined that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the RFC "to perform a full range of work at all exertional levels" with the limitations that such work be unskilled, entry level, and object oriented. [AR at 14.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 17-18.] At step five, using the Medical-Vocational Rules as a framework, the ALJ concluded that there are "jobs that exist in significant numbers in the national economy that [plaintiff] can perform" and that plaintiff "would be able to do any unskilled, entry level, object oriented work." [AR at 18.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 18-19.]

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   The ALJ also determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2005. [AR at 13.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly consider the treating physician's opinion; (2) properly consider the consultative examiner's opinion; (3) properly consider the treating psychiatrist's opinion; (4) properly consider the lay witness statements; (5) properly consider the type, dosage, and side effects of plaintiff's prescribed medications; (6) obtain vocational expert testimony; and (7) properly develop the record. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A. DR. DAVIDSON CIBELLI'S FINDINGS**

Plaintiff contends that the ALJ rejected the treating physician's opinion without providing specific and legitimate reasons for doing so. [JS at 3-5, 8.] The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. "[W]here the treating physician's opinion is not contradicted by another doctor," however, the ALJ may only reject it for clear and convincing reasons. See Lester, 81 F.3d at 830. Where a treating physician's opinion conflicts with the medical evidence or another doctor's opinion, the ALJ must provide specific and legitimate reasons for discounting the opinion. See id. (stating that the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

1 evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion
2 of an examining physician that constitutes substantial evidence, the treating physician's opinion
3 is 'still entitled to deference.'") (citations omitted); Social Security Ruling[3] 96-2p (a finding that a
4 treating physician's opinion is not entitled to controlling weight does not mean that the opinion is
5 rejected). Likewise, the ALJ cannot reject the uncontradicted opinion of an examining physician
6 without clear and convincing reasons, and the ALJ must provide specific and legitimate reasons
7 supported by substantial evidence when rejecting contradicted opinions of examining physicians.
8 Lester, 81 F.3d at 830-31.

9 On April 25, 2006, Dr. Cherilyn E. Davidson Cibelli authored a Confidential Diagnostic &
10 Psychological Test Report based on her examination of plaintiff. [AR at 194-96.] Dr. Davidson-
11 Cibelli administered six different psychological tests on plaintiff to "reassess" his attention deficit
12 hyperactivity disorder ("ADHD"). [AR at 194.] Based on the tests, Dr. Davidson Cibelli diagnosed
13 plaintiff with the following mental impairments: (1) ADHD, combined type, severe; (2) bipolar II
14 disorder; and (3) narcissistic personality traits. [AR at 196.] She assigned him a Global
15 Assessment of Functioning ("GAF") score of 50[4], which indicates serious limitations and possibly
16 an inability to keep a job. [Id.] Dr. Davidson Cibelli recommended that plaintiff obtain a psychiatric
17 assessment and undergo therapy. [Id.]

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th Ed. 2000) ("DSM-IV"). A GAF score between 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). Id. at 34.

Four other physicians[5] also provided opinions. Dr. John J. Kohut, a treating psychiatrist, diagnosed plaintiff with bipolar affective disorder, generalized anxiety disorder, and ADHD. [AR at 198.] Dr. Kent Jordan, a consultative psychiatric examiner, diagnosed plaintiff with prescription stimulant dependency, prescription stimulant-induced manic-like behavior, bipolar disorder, ADD by history only, and obsessive-compulsive disorder. [AR at 206.] Dr. Jordan assigned a GAF score of 55-60[6] and opined that plaintiff would have problems dealing with supervisors, coworkers, and the usual stress from employment, but that he could perform simple repetitive tasks. [AR at 207.] Dr. Harrell Reznick, a consultative psychological examiner, diagnosed plaintiff with an anxiety disorder and learning disorders. [AR at 171.] Dr. R.B. Paxton, a State Agency physician, diagnosed plaintiff with anxiety-related disorders and opined that he generally had only mild functional limitations. [AR at 178, 188.]

In the decision, the ALJ concluded that the medical evidence indicates that plaintiff had a "questionably severe impairment from an anxiety like disorder," but that plaintiff is able to perform "a full range of work" with some nonexertional limitations. [AR at 13-14.] The ALJ rejected Dr. Davidson Cibelli's opinion on the ground that it is "completely inconsistent" with and rebutted by the findings and conclusions of the consultative examiners and State Agency physicians. [AR at 17.] The ALJ also stated that the report was "obtained and paid for by" plaintiff, thus implying that it lacked credibility. [Id.]

As an initial matter, the Court disagrees with plaintiff's contention that Dr. Davidson Cibelli is a treating physician. [JS at 3-5.] A treating physician is a physician that has been employed to cure and can provide a longitudinal picture of a patient's impairments. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Smolen, 80 F.3d at 1285. In contrast, an examining physician is one who has examined the patient on one occasion for the purpose of evaluating his disability

---

[5] Although Dr. Davidson Cibelli and Dr. Harrell Reznick are not medical doctors, both are licensed psychologists and are acceptable medical sources for purposes of this analysis. See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

[6] A GAF score between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. DSM-IV at 34.

claim. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). Here, as Dr. Davidson Cibelli acknowledged, plaintiff saw her to reassess his ADHD and not for treatment purposes. [AR at 194.] Dr. Davidson Cibelli's recommendation to plaintiff to seek further psychiatric assessments and undergo psychotherapy is further evidence of her limited role as an examining physician. [AR at 196.] There is no indication in the record that plaintiff saw her other than on this one occasion. Regardless of whether Dr. Davidson Cibelli is a treating or examining physician, however, the ALJ must provide specific and legitimate reasons to reject her opinion. See Lester, 81 F.3d at 830-31.

The ALJ rejected Dr. Davidson Cibelli's opinion in a conclusory fashion, stating that it is "completely inconsistent" with the opinions of the consultative examiners and State Agency physician. [AR at 17.] This reason fails to reach the level of specificity required to reject a physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the treating physician's opinion was flawed"). The ALJ failed to provide specific reasons why Dr. Davidson Cibelli's opinion is incorrect, instead merely referring to the conclusions of the consultative examiners and State Agency physician. He did not, however, specify which are the inconsistent conclusions and findings. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (stating that specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings."). The ALJ neither discussed Dr. Davidson Cibelli's diagnosis and the limitations she presented, nor provided reasons why her opinion should be accorded less weight than the other opinions.

Further, contrary to the ALJ's assertion, Dr. Davidson Cibelli's opinion was not "completely inconsistent" with those of the consultative examiners and State Agency physician. Dr. Jordan

conducted a complete psychiatric evaluation of plaintiff and diagnosed him with bipolar disorder, which is consistent with Dr. Davidson Cibelli's diagnosis. [AR at 196, 206.] Dr. Reznick and Dr. Paxton diagnosed plaintiff with anxiety [AR at 171, 178], and Dr. Reznick further diagnosed plaintiff with learning disorders. [AR at 171, 178.] The diagnoses of bipolar disorder, anxiety, and learning disabilities are not clearly inconsistent with Dr. Davidson Cibelli's findings. Indeed, some symptoms of bipolar disease, anxiety and ADHD overlap, and anxiety, bipolar disease, and learning disabilities are often coexisting conditions of ADHD.[7] Despite reaching different conclusions concerning whether plaintiff currently had ADHD and the extent of his functional limitations, it is not apparent from the record that Dr. Davidson Cibelli's findings are "completely inconsistent" with those of the consultative examiners and State Agency physician. Rather, her conclusions concerning plaintiff's limitations were simply more restrictive. In addition, Dr. Kohut, a treating psychiatrist whose opinion was improperly rejected as discussed infra, also diagnosed plaintiff with bipolar disorder, anxiety, and ADHD. [AR at 198.] Thus, inconsistency was not a specific and legitimate reason supported by substantial evidence to reject Dr. Davidson Cibelli's opinion concerning the functional limitations.[8]

The fact that plaintiff retained Dr. Davidson Cibelli is also not a legitimate reason to reject her opinion. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester, 81 F.3d at 832. As the ALJ cited no evidence of impropriety, it was improper for the ALJ to reject Dr. Davidson Cibelli's opinion on this basis.

---

[7] See http://www.nimh.nih.gov/health/publications/attention-deficit-hyperactivity-disorder/what-conditions-can-coexist-with-adhd.shtml.

[8] The Court notes the ALJ appears to have rejected Dr. Davidson Cibelli's opinion in its entirety. The majority of Dr. Davidson Cibelli's findings are uncontroverted. Where uncontroverted, the ALJ must provide clear and convincing reasons to reject the opinion.

Because the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Davidson Cibelli's opinion, the Court remands this matter so that the ALJ can properly evaluate the opinion of Dr. Davidson Cibelli.[9]

**B.  DR. KOHUT'S FINDINGS**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the treating psychiatrist's opinion. [JS at 12-13.]

Dr. John J. Kohut began treating plaintiff on April 4, 2006. [AR at 198.] In a letter to the Department of Social Services dated November 10, 2006, Dr. Kohut stated that he diagnosed plaintiff with: (1) bipolar affective disorder, type II, mixed; (2) generalized anxiety disorder; and (3) ADHD. [Id.] Dr. Kohut prescribed Adderal XR and Effexor XR, among other medications. [AR at 198, 219-20.] Dr. Kohut also stated that plaintiff is under the care of Dr. Zvi L. Soltz, a clinical psychologist. [AR at 198.] The treating notes indicate, and plaintiff testified, that Dr. Soltz and Dr. Kohut, as a team, treated plaintiff. [AR at 35, 209-20.]

As discussed supra, every physician, whether treating, examining, or State Agency, reached slightly different conclusions concerning plaintiff's mental impairments, but generally, the findings and conclusions are not contradictory. Dr. Davidson Cibelli reached the same conclusion as Dr. Kohut that plaintiff had ADHD. [AR at 196.] Dr. Davidson Cibelli and Dr. Jordan both agreed with Dr. Kohut's bipolar disorder diagnosis. [AR at 196, 206.] Like Dr. Kohut, Dr. Reznick and Dr. Paxton also diagnosed plaintiff with anxiety. [AR at 171, 178.] As such, where the opinions are not contradictory, the ALJ must provide clear and convincing reasons to reject the opinion. Where the opinions are contradictory, he must provide specific and legitimate reasons to reject. See Lester, 81 F.3d at 830. As the treating physician, Dr. Kohut's opinion was entitled to the greatest weight. See id. If the ALJ's rejection of Dr. Kohut's opinion was based on the

---

[9]  As the ALJ's consideration of this issue on remand may impact the need for vocational expert testimony, the Court will not consider the vocational expert issue at this time.

opinions of the consultative examiners, then the ALJ needed to provide specific and legitimate reasons why their opinions were superior to the opinion of Dr. Kohut.

The ALJ failed to provide a clear reason for rejecting Dr. Kohut's opinion, stating only that he found Dr. Kohut "generally does not cooperate and his notes are useless." [AR at 17 (internal citations omitted).] The ALJ's cursory explanation is insufficient and ambiguous; the reasons are not specific and legitimate but rather open to interpretation. "[G]enerally does not cooperate" does not explain why Dr. Kohut's opinion is flawed, neither does it explain if he refused to cooperate in this particular case, and if so, in what manner he failed to cooperate. [Id.] Similarly, the ALJ's determination that Dr. Kohut's "notes are useless" is neither clear and convincing nor specific and legitimate. A reasonable interpretation of the ALJ's reasoning is that the notes are too brief and fail to support Dr. Kohut's conclusions. See Batson v. Comm'r, 359 F.3d 1190, 1995 (9th Cir. 2004) (finding that an ALJ may reject a treating physician's opinion that is conclusory, brief and unsupported by the record); Kladde v. Astrue, 2009 WL 838104, *4 (C.D. Cal. Mar. 26, 2009) (finding that treatment notes that were brief and consisted of "no more than a few words" was a specific and legitimate reason for rejecting an opinion). An equally plausible interpretation is that the ALJ simply found Dr. Kohut's notes illegible. In that case, the ALJ had the duty to further develop the record by contacting Dr. Kohut, whose notes might provide more insight into his diagnoses and plaintiff's limitations. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ambiguous evidence triggers the ALJ's duty to conduct additional inquiry). While the ALJ may reject an opinion that is conclusory and unsupported by medical findings, the ALJ did not make such a finding here. The ALJ's cursory rejection does not provide any guidance to resolve this ALJ-created ambiguity.[10]

Because the ALJ failed to provide clear and convincing reasons for rejecting the uncontradicted portions of Dr. Kohut's opinion, or specific and legitimate reasons for rejecting the

---

[10] Defendant argues that the ALJ properly rejected Dr. Kohut's opinion because he failed to discuss plaintiff's functional limitations. [JS at 13.] The ALJ did not make such a finding and instead rejected the opinion in a vague and conclusory fashion.

contradicted portions, the matter must be remanded so that the ALJ can properly address the opinion of Dr. Kohut or further develop the record if necessary.

**C.   FAILURE TO CONSIDER LAY WITNESS TESTIMONY**

Plaintiff contends that the ALJ failed to properly consider lay witness testimony. [JS at 13-15.] Specifically, plaintiff argues that the ALJ rejected the testimony of plaintiff's wife, Martha Petite, without providing a germane reason for doing so. [JS at 15.] As set forth below, the Court agrees that the ALJ improperly discounted Ms. Petite's testimony without providing germane reasons specific to her.

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . [T]his is particularly true of witnesses who view the claimant on a daily basis. . ."). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r, 166 F.3d 1294, 1298 (9th Cir. 1999).

In support of plaintiff's application, Ms. Petite submitted two third party function reports, and testified at the hearing. [AR at 36-44, 81-94, 113-22.] In the third party function report dated February 8, 2006 ("February 2006 Report"), Ms. Petite reported that she has known plaintiff for forty-nine years and been married to him for nearly forty years. [AR at 81, 90.] Ms. Petite observes plaintiff on a daily basis, spending five hours each weekday and all weekend with him.

[AR at 81.] Ms. Petite indicated that plaintiff needs reminders to take care of his personal needs and with medication. [AR at 83.] In addition, plaintiff has trouble with concentration and memory. [AR at 82-83.] In a detailed letter attached to the February 2006 Report, Ms. Petite wrote that plaintiff was diagnosed with ADD fifteen years ago and was prescribed Cylert. [AR at 92-93.] Plaintiff responded well to Cylert but the FDA removed it from the market in 2005. [AR at 93.] Plaintiff's physician then prescribed Straterra, which had adverse effects on plaintiff. [Id.] Ms. Petite wrote that plaintiff's abilities then declined. [Id.] Plaintiff became "completely zoned," "unmotivated," and unable to complete tasks. [Id.] In particular, plaintiff experiences trouble with his memory, including forgetting where he puts items, how to resolve problems on the computer, and to take showers. [Id.]

In the third party function report dated November 30, 2006 ("November 2006 Report"), Ms. Petite provided further details about plaintiff's problems with daily functioning and his deterioration. [AR at 113-22.] Ms. Petite explained that plaintiff's memory and concentration problems affect his ability to care for himself and socialize. [Id.] In a letter attached to the November 2006 Report, Ms. Petite further emphasized the changes in plaintiff's demeanor and abilities that have occurred since he switched medications. [AR at 121-22.] Plaintiff is "no where near functioning at his previous level," is withdrawn, has strained relationships with his children, and can no longer cook or maintain the house at his previous level. [Id.] Ms. Petite stated that plaintiff's most severe limitation is his low energy level; plaintiff is "done" by about 2:00 p.m. [AR at 122.]

Ms. Petite also testified at the hearing. [AR at 36-44.] She testified that plaintiff is unemployable. [AR at 37-38.] Primarily because of plaintiff's concentration problems, he is unable to conform to the structure and protocol required by employers. [AR at 38-39.] Ms. Petite further testified that plaintiff was a "high performer" but now is unable to take care of his personal hygiene, complete tasks, or get along with other family members. [AR at 40-44.]

In the decision, the ALJ rejected Ms. Petite's testimony and found her "only credible to the extent that [plaintiff] can do the work described [in the ALJ's decision]." [AR at 16.] In other words, the ALJ only found Ms. Petite credible to the extent that her testimony was in agreement with the ALJ's decision. The ALJ rejected Ms. Petite's testimony on the grounds that she is not

a medical professional and she is biased because, as the sole earner, she has a "major financial interest" in obtaining additional household income. [Id.]

The ALJ's reasons for rejecting Ms. Petite's testimony are not germane reasons specific to her. First, the ALJ mischaracterized Ms. Petite's testimony in stating that she is not competent to diagnose plaintiff's impairments because she is not a medical professional. [AR at 16.] Ms. Petite did not offer her own diagnosis of plaintiff. Rather, she stated that he had been diagnosed by physicians as having ADD, and testified as to her independent observations of plaintiff's functional limitations during different periods of his life and on different drugs. [AR at 36-44, 92.] Second, the fact that Ms. Petite is not a medical professional is not a germane reason for rejecting her testimony. Lay witnesses, by definition, are not medical professionals. Otherwise, this reason would amount to a wholesale dismissal of all lay witnesses. "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague, 812 F.2d at 1232.

Likewise, the fact that Ms. Petite may have an interest in the outcome of plaintiff's case is not a ground in the present circumstances for rejecting her testimony. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (stating that it was improper for the ALJ to reject a spouse's testimony on the basis that she was an interested party because it contradicts the tenet that family members are competent witnesses); Daniels v. Astrue, 2010 WL 1931264, *7 (C.D. Cal. May 12, 2010) (holding that the ALJ erred when he discounted a lay witness' testimony on the bases of bias and having an interest in the outcome). Family members are often likely to benefit financially to some extent if their family member receives disability benefits. As defendant admits, "[g]enerally an allegation that a family member is not credible based on pecuniary gain or bias alone is not sufficient to reject the testimony of a lay witness." [JS at 16 (citing Sprague, 812 F.2d at 1231-32).] Bias and financial motive may serve as legitimate reasons to discredit the testimony of a third party only when those reasons are supported by substantial evidence. See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (stating that testimony inconsistent with medical evidence is a germane reason for rejecting lay witness testimony). The ALJ's assertion that Ms. Petite is the sole earner in the household is

not substantial evidence of bias.  Accordingly, the ALJ erred by failing to provide specific reasons germane to Ms. Petite for discounting her testimony.  Remand is warranted on this issue.

**D.    DR. REZNICK'S FINDINGS**

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Reznick, a consultative examiner.  [JS at 8.]  The Court disagrees.

Dr. Harrell Reznick examined plaintiff and issued a psychological evaluation on March 22, 2006.  [AR at 166-72.]  Dr. Reznick administered numerous tests on plaintiff and diagnosed plaintiff with anxiety disorder, not otherwise specified, obsessive-compulsive features and learning disorders.  [AR at 166, 171.]  Dr. Reznick concluded that plaintiff can perform simple and repetitive tasks with minimal supervision.  [Id.]  Dr. Reznick further opined that plaintiff would experience "mild difficulties tolerating ordinary work pressures" and interacting with others.  [Id.]

The ALJ properly considered Dr. Reznick's opinion.  In the decision, the ALJ discussed Dr. Reznick's conclusions, and stated that his [the ALJ's] findings were consistent with those of Dr. Reznick.  [AR at 17.]  Further, the ALJ incorporated Dr. Reznick's limitations in the RFC, limiting plaintiff to unskilled, entry level and object oriented work.  [AR at 14.]  As the ALJ thus credited Dr. Reznick's opinion, remand is not warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate for the ALJ to: 1) reconsider the medical evidence; 2) reconsider plaintiff's credibility; and 3) if warranted, obtain new testimony from a vocational

expert.[11] The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 1, 2010

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11] As remand is warranted on these grounds, the Court will not address the remaining issues raised by plaintiff.